## GOVERNOR, use, &c. v. WILEY, et al.

1. In proceeding on penal bonds, the plaintiff may declare for the penalty, or under the act of 1824, may set out the condition, either in whole or in part, and assign one, or more breaches; or if the defendant does not by his plea tender an issue, he may assign breaches in his replication; and after judgment by default, or on demurrer, for the plaintiff, he may suggest them on the roll. If the declaration be substantially defective, in the assignment of breaches, the plaintiff cannot strike them out after demurrer.

2. Where the declaration on a penal bond, contains a count on the penalty, and another setting out the condition, and assigning breaches, a replication, which assigns different breaches from those previously assigned, will be supported, as it respects the count on the penalty.

3. A breach, that the register in chancery issued an injunction, to restrain the collection of a *fieri facias*, without an authority for that purpose, and that the plaintiff, in consequence thereof, was unable to obtain satisfaction of his judgment, is well assigned.

4. If a clerk, or register, issue a writ of error with *supersedeas*, without taking from the defendant in the judgment, a bond according to law, with two or more sufficient sureties, he will be liable on his official bond, to any one injured.

5. When the register issues an injunction, it should appear upon the face of the process, either by a recital of the fact, or by necessary inference, that

it issued under proper authority. If an injunction is wanting in this particular, it is nugatory, and obedience to it cannot be coerced.

6. Where process is inoperative as an injunction, the sureties of the register are not liable for any action had upon such process, upon the official bond of their principal.

Writ of Error to the Circuit Court of Barbour.    Before the Hon. G. D. Shortridge.

THIS was an action of debt, founded on the official bond executed by the defendant, Wiley, as register of the ninth chancery district of the southern division of Alabama, and alledging a breach, by the failure of the register to take sufficient security in an injunction bond executed by Noah B. Cloud, to enjoin an execution issued in favor of Charles L. Hall, returnable to the fall term of the circuit court of Russell, holden in 1841. The defendants craved oyer of the condition of the bond, and pleaded performance, and that they are not guilty of the breaches alledged. To this the plaintiff replied, and for assignment of the breaches of the condition of the bond, says that on the 19th day of April, 1841, in the circuit court of Russell, Charles L. Hall recovered judgment against Noah B. Cloud, for the sum of $452 66, besides costs, and on the 15th June thereafter, sued out a *fieri facias* thereon, returnable to the succeeding term, which writ, on the same day, was placed in the hands of Benjamin H. Baker, the then sheriff of Russell, for execution—Cloud being solvent, and having sufficient property in that county during all that time to satisfy the *fi. fa.*, and which was within the knowledge and reach of the sheriff. On the 20th August, 1841, Cloud filed his bill in chancery, at Clayton, praying, among other things, an injunction of a judgment for $350, recovered by plaintiff against Cloud, but not praying an injunction of the judgment first mentioned. An injunction was granted by one of the circuit court judges, and the *fiat* therefor was indorsed on the bill, directing the defendant Wiley, as register, on good bond being given, conditioned as required by law to issue an injunction, inhibiting all further proceedings to collect the judgment by the bill prayed

to be enjoined. It is then averred that the defendant, Wiley, in proceeding under the *fiat*, so negligently and unskilfully conducted himself, that he on the 23d August, 1841, issued an injunction restraining the collection of the judgment first mentioned in this replication, without an order therefor. The sheriff was duly notified of the issuing of the injunction, but had no notice of the irregularity: *Further*, at that time he had the *fi. fa.* in his hands, and the same could have been collected; but by reason of the issuing of the injunction, he was restrained in its execution until Cloud became wholly insolvent, and the debt secured by the judgment on which it issued is wholly lost to Hall, the beneficial plaintiff.

For further breach, the plaintiff saith, that on the 19th day of April, 1841, Hall recovered a judgment against Cloud in the circuit court of Russell, for the sum of $452 66, besides costs, and alledges the issuing of an execution thereon, and that Cloud had property in Russell as in the first breach stated: *Further*, that on the 20th August thereafter, Cloud filed his bill in chancery at Clayton, to enjoin the execution last stated, and an order was granted by the chancellor accordingly, by which the defendant, as register, was ordered on good and sufficient bond, with good security being given, to issue an injunction according to the prayer of the bill. It is then alledged that the defendant, as register, on the 20th August, 1841, took and accepted from Cloud a defective bond, with insufficient surety, and thereupon issued the injunction whereby the collection of the judgment recited in this breach was restrained until the defendant therein became wholly insolvent, so that the entire debt is lost to Hall: *Further*, that the injunction has been dissolved, but the judgment has not been, nor can be collected, because Cloud, and his sureties in the bond, are all insolvent, *&c.*

The defendant rejoined, that no such injunction as that described in the second breach assigned, ever issued, and issue was thereon joined—as to the first breach he demurred; and his demurrer being sustained, the issue was submitted to a jury, who returned a verdict for the defendant, and judgment was rendered accordingly.

A bill of exceptions was sealed at the plaintiff's instance, from which it appears, he proved by the deposition of Ben-

jamin H. Baker, who was sheriff of Russell county during the year 1841, that he had in his hands an execution in favor of Charles L. Hall, against Noah B. Cloud, and believes it to be the only one he ever had between the same parties. Witness does not recollect the amount of the execution, nor its date; and he cannot say with certainty whether it was from the circuit or county court of Barbour, but believes it was from the former. Witness was duly notified of the issuing of an injunction from the chancery court of Barbour, by the defendant as register, in the year 1841, to restrain proceedings on the execution in favor of Hall against Cloud. Plaintiff then offered the record of an injunction, as follows: "The State of Alabama, Barbour county. To the sheriff of Russell county, greeting. You are hereby commanded to desist from all further proceedings on a certain execution now in your hands in favor of Charles L. Hall, against Noah B. Cloud, until further order of chancery at Clayton, in the second district of the southern division of the state aforesaid, which has the matter in controversy under its consideration. Given under my hand and private seal, at office, at Clayton, this 23d day of August, A. D. 1841. J. McCaleb Wiley, Register."

The defendants called the attention of the court to the fact, that the record of which the injunction was a part, contained a bill describing a judgment in favor of Hall against Cloud, for $350, rendered in the circuit court of Russell, and praying an injunction of the same; and that the *fiat* directed an injunction to issue agreeably to the prayer, on complainant, Cloud giving bond with surety in the sum of $700; conditioned as required by law. Thereupon the defendants moved to exclude from the jury the record of the injunction offered in evidence, because it differed from the judgment described in the pleadings in the amount; the motion was accordingly granted, and the evidence excluded.

The matters of law arising out of the judgment of the court upon the demurrer, and the facts as set forth in the bill of exceptions are now assigned for error.

N. W. COCKE, with whom was J. BUFORD, for plaintiff in error.

1. The condition of an official bond, that the officer giving it, shall "well and truly" execute the duties of his office, includes not only honesty, but reasonable skill and diligence. If the duties are performed negligently and unskilfully; if they are violated from want of capacity or want of care, they can never be said to have been well and truly executed. Minor et al v. M. Bank of Alex. 1 Peters, 46; 12 Pick. 303.

2. Such a bond covers all misfeasances and malfeasances of the officer whilst acting under color of his office. The Governor, use, &c. v. Hancock et al. 2 Ala. 728; Harris v. Haneon, 2 Fairf. 241; Archer v. Noble et als. 3 Greenl. 418; The People v. Brush, 6 Wend. 454; Carmack v. The Commonwealth, 5 Binn. 184.

3. The mandate of the register was sufficient to have subjected the sheriff to punishment for a contempt, if he had disregarded it. It was not a nullity, and the sheriff could not with safety do otherwise than obey it. Sullivan v. Judah et al. 4 Paige, 444; 10 Ala. Rep. 828; Clay's Dig. 345, § 7.

4. The case is somewhat analogous to that of a clerk who issues execution so irregularly, that it is afterwards avoided. He and his sureties would unquestionably be liable for any damage to the plaintiff, that might be a consequence of his negligence.

5. It is doubtful whether the sheriff, under the circumstances of this case, is liable for not proceeding to execute the process, and if the register and securities are not, the plaintiff will have sustained a loss without a remedy, unless it may be against a perhaps irresponsible officer.

6. The exclusion of the evidence, as shown by the bill of exceptions, was erroneous. It was competent testimony, at the stage of the case at which it was offered. Its effect was a matter for after consideration.

7. The judgment entry shows that the demurrer was general to the whole replication, and should have been overruled, as the second assignment in the replication is good. Chandler v. Holloway, 4 Port. 17; Botts v. Bridges, Id. 274; Chamberlain v. Darrington, Id. 515; 1 Chit. Pl. 443.

P. T. SAYRE, contra.

1. The action is against the register and his sureties for

taking an insufficient injunction bond. Such is the cause of action, indorsed upon the writ, and set out in the declaration. The replication is intended to answer the plea of defendant, which in this case is, that the conditions of the bond, were performed so far as the taking of good security is concerned. The plaintiff had no right to file such replication, as he had elected to assign his breaches in the declaration; at all events, he must be consistent in his pleading, and not set out two states of fact in his pleading, entirely inconsistent with each other. 1 Chit. Pl. 681. The register is not liable on his bond, upon the case made out by the replication. He should have been sued in case. The demurrer was necessarily a several one, and appears so from the judgment.

2. The *fiat* sought to be introduced, was upon an injunction, in another case. The bill upon which the injunction issued was for $350, and that *fiat*, could by no possibility affect an execution for $450. The execution enjoined as set out in the declaration, was obtained in the circuit court of Russell, and was for $452 66, and the state of the pleadings would not authorize evidence, showing that some other judgment had been enjoined. It was an attempt to establish an issue, which did not exist. There was no pretence in this case that there was a mistake in the record.

COLLIER, C. J.—In proceeding on a penal bond, the plaintiff may declare for the penalty; or under the act of 1824, "regulating proceedings on penal bonds," he may set out the condition, either in whole or in part, and assign one or more breaches; or if the defendant does not by his plea tender an issue, he may assign breaches in his replication; and where judgment is rendered for the plaintiff on demurrer, or by default, if he has not previously assigned breaches, he may suggest them on the roll. If the declaration be substantially defective in the assignment of breaches, the plaintiff will not be allowed to strike them out after demurrer, on the ground that the declaration is good without them. Watts's ex'rs v. Sheppard, 2 Ala. Rep. 425, and cases there cited; Lardler v. The State, 2 Har. & G. Rep. 277. It has been held, that where the plaintiff in an action of covenant speci-

23

fies breaches in his declaration, he cannot recover for other breaches not particularly stated. Finley v. Bœhm, 3 G. & Johns. Rep. 42. So, where the plaintiff declares on the penalty of a bond, and the defendant craves oyer and pleads conditions performed, the plaintiff may assign breaches in his replication; but if he assigns special breaches in his declaration, he cannot countervail the plea of defendant by assigning others. Gentry v. Barnett, 6 Monr. Rep. 114; Dixon v. The United States, 1 Brockenb. Rep. 177.

It is stated as a general rule, that an entire replication bad in part, is bad for the whole, but this rule applies only where the matter objected to, is material. 2 Saund. on Pl. and Ev. 775, and citations there. Although the plaintiff or defendant may fortify the declaration or plea by the replication or rejoinder, yet it is not allowable for a party to depart from the case or defence which he has first made, and thus have recourse to another. This is what is technically called a *departure* in pleading. Id.; U. States v. Morris, Paine's Rep. 209; Hallett v. Slidell, 11 Johns. Rep. 56; Pollard v. Taylor, 2 Bibb's Rep. 234; 5 Ala. Rep. 341; Tarleton v. Wells, 2 N. Hamp. Rep. 306; 1 Chit. Plead. 618.

Where, in a declaration upon a penal bond, conditioned to perform some duty, several breaches are assigned, if one of them be good, a demurrer to all of them will not be sustained, though the others be bad. The correct practice in such case is to demur severally to each breach. Botts et al. v. Bridges, 4 Ala. Rep. 274; Harmon v. Thompson, 2 How. Rep. (Miss.) 808; McCoy v. Hill, 2 Litt. Rep. 372; Taylor v. Pope, 3 Ala. Rep. 190. And the law is the same where the breaches in such case are assigned in the replication. Martin et al. v. Williams, 13 Johns. R. 264. See also Dowsland v. Thompson et al. 2 Bla. Rep. 910; Owen v. Henderson, 7 Ala. Rep. 641.

In the case before us, the declaration contains two counts, the first on the penalty merely, while the second sets out the condition of the bond, alledges four several breaches, which substantially affirm that the defendant Wiley, as register, failed to take security, or sufficient security, (according to the order of the judge for that purpose,) upon issuing the injunction, in consequence whereof the beneficial plaintiff is

unable to obtain satisfaction of his judgment. The replication to the plea of covenants performed, states two breaches; the first of which alledges that N. B. Cloud, upon a bill describing a judgment for $350, and praying that the same might be enjoined, obtained an order for an injunction to issue according to the prayer of the bill; and that the register so unskilfully and negligently issued the same, that he enjoined the sheriff from collecting a *fi. fa.* issued on the judgment for $452 66—since which time Cloud has become insolvent, and the judgment last mentioned cannot be satisfied, *&c.* The second breach is substantially the same as those embraced in the second count of the declaration.

It is provided by the act of 1824, that in all actions in any court of record, upon any bond, or on any penal sum, for non-performance of any covenants or agreements contained in any indenture, deed or writing, the plaintiff may assign as many breaches as he may think fit, and the jury shall assess damages for such as he shall prove, &c.

Each count in the declaration is regarded as a distinct and independent cause of action, and although it may not be allowable for a plaintiff who has assigned breaches in his declaration according to the statute, to assign others in a replication to the plea of *conditions performed*, yet this rule will not apply where the declaration contains several counts, one of which is on the penalty only. In such case, the count on the penalty is not demurrable, yet upon the coming in of the plea, it devolves upon the plaintiff to aid it by showing a breach, which can only be done by a replication assigning it. The replication, then, as it respects the first count, is not bad, because it assigns a breach other than those stated in the second.

In respect to the first breach assigned in the replication the question is, whether it shows such a breach of the official bond of the register as entitles the plaintiff to an action against him and his sureties. The act of 1839, "to authorize and establish separate courts of chancery," provides that the registers before they enter upon the discharge of their duties, shall give bond with securities in the sum of ten thousand dollars, payable to the governor, &c., "for the faithful discharge of their respective offices." Clay's Dig. 345, § 7.

By the terms " faithful discharge," in the connection in which they are used, we are to understand a stipulation that the register shall correctly, with exactness and according to law, perform his official duties ; and if he does an act under color of his office, and as an officer, so inaccurately and imperfectly as to occasion a loss to a party to the proceeding, this is a breach of the condition of his bond. The breach alledged is, that the register issued an injunction to restrain the collection of a *fieri facias*, without an authority for that purpose, and that the plaintiff, in consequence thereof, was unable to obtain satisfaction of his judgment—the defendant, while the injunction was operative, becoming insolvent. This breach is well assigned, and is a direct denial that the register faithfully discharged the duties of his office.

In the Governor, use, &c. v. Hancock & Harris, 2 Ala. R. 728, which was action on a sheriff's bond against his sureties, this court said, " we will not say that the sureties of a sheriff are not liable in some cases of malfeasance; but in such case we think the malfeasance must include a misfeasance also : as, for instance, if the sheriff should wantonly destroy property levied on by him, this would be a tortious act, but there would likewise be a tortious omission of his duty, which is, to keep the property safely." It has been held, that the official acts of the clerk of the circuit court, embrace every act that the law requires him to perform in virtue of his office; the issuing of a writ of error is an official act, and so is his taking bond with two or more sufficient sureties upon issuing such writ : if therefore, he issues a writ of error with *supersedeas*, without taking from the defendant in the judgment a bond according to law, with two or more sufficient sureties, he will be liable on his official bond. In such case the bond may be sued on by any person injured, and a recovery be had to the amount of the penalty thereof. McNutt, Governor, v. Livingston, 7 S. & Mar. Rep. 641. These citations, if they do not directly sanction, certainly strengthen the conclusion we have expressed as to the sufficiency of the first breach assigned in the replication. Upon this point we have but to add, that the demurrer was improperly sustained.

It was proved at the trial, that the sheriff to whom the injunction was addressed, had no other execution in his hands

in favor of Hall against Cloud, than that described in the declaration. The record which was offered, as an injunction, does not recite that it issued under an order, but is in terms a mandate from the register himself to the sheriff, to desist from all further proceedings on an execution in his hands in favor of Hall against Cloud, until further order of chancery, which has taken the matter in controversy under its consideration. By an act passed in December, 1841, the registers in Chancery were authorized to grant *writs of injunction* and *ne exeat*, and all special orders which it would be competent for the chancellor to grant, in vacation. But a statute of February, 1843, declares that it shall not be lawful for registers in chancery to grant or dissolve injunctions. At the time the injunction in question issued, an order of a chancellor or judge, was necessary to authorize it; and we think it should appear on the face of the process, either by a recital of the fact, or necessary inference, that it issued under proper authority. The register does not even designate the precept an injunction, or inform the sheriff in what manner the court of chancery had taken "the matter in controversy under its consideration." For any thing appearing to the contrary, it might have been by an original bill, which did not arrest the action of the execution. The paper then addressed to the sheriff was the mandate of the register, if its terms are to be regarded as indicative of its character, without any thing to show it was issued under competent authority; and thus considered, it was a nugatory act, to which obedience could not have been coerced.

*Again:* Should not an injunction describe an execution upon which it operates with such particularity, that it may be identified by a comparison of the one with the other, so that the officer to whom it is addressed may be chargeable for a contempt if he fails to yield obedience to it? We will not affirm that such is the law; but it is clear that the process in question is defective for the generality of its terms. Here the only description of the execution is, the names of the parties to it, and a statement that it was in the sheriff's hands. If he had several executions between the same par-

ties, it would have been impossible for him to know which was intended to have been affected by the injunction, and thefore might have disregarded the injunction as to all of them. Does the fact that he happened to have but one execution, give to the injunction vitality and force? However these questions may be answered, we are of opinion, for the reason first stated, that the process was inoperative as an injunction of the execution, and should not have been obeyed by the sheriff. This being its character, the plaintiff could not legally have been prejudiced by it, and the defendants are not liable for an irregular act of the register, upon his official bond. Whether the register is individually chargeable in any form of action, is a question not presented by the record, and we have consequently not considered it.

The view we have taken will suffice as a guide to further proceedings, and have but to add, that the judgment is reversed, and the cause remanded.